IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**BALLESTER HERMANOS, INC.,**

  Plaintiff,

  v.

**BRUGAL & CIA. C. POR A.,** *et al.***,**

  Defendants.

Civil No. 19-2100 (BJM)

**OPINION AND ORDER**

Plaintiff Ballester Hermanos, Inc. ("Ballester") filed suit against Brugal & Cia. C. por A. ("Brugal") and Edrington Group USA, LLC ("Edrington" and together with Brugal, the "Defendants"), over the termination of a distribution contract between Ballester and Brugal. Docket No. ("Dkt.") 142. Ballester claims that Brugal violated the Puerto Rico Dealer's Act, 10 L.P.R.A. § 278, *et seq*. ("Law 75"), in terminating their distribution contract without just cause. *Id*. at 6-8. They also claim that Edrington tortiously interfered with the distribution contract in violation of Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. *Id*. at 11-12. Before the court is Defendants' motion for summary judgment. Dkt. 235. Ballester opposed Defendants' motion. Dkt. 260. This case is before me with the consent of the parties. Dkt. 193; 194. For the following reasons, Defendants' motion for summary judgment is **DENIED**.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if

it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood" upon conflicting evidence, no matter how reasonable those ideas might appear. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). "To defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)).

## BACKGROUND

The following narrative is drawn from the facts alleged by the parties, making reasonable inferences in favor of Ballester as the non-moving party.

Brugal is a rum-manufacturing corporation organized under the laws of the Dominican Republic. Dkt. 142 at 2-3 ¶¶ 2, 6. Beginning around 1990, they began working with Ballester, a Puerto Rico corporation. *Id*. at ¶¶ 1, 6. Ballester served as a distributor for Brugal in Puerto Rico, advertising and promoting the Brugal brand and distributing cases of rum to retailers. *Id*. at 2-3 ¶¶ 6, 11, 17. In 2008, Edrington purchased a majority of Brugal's shares. *Id*. at 4 ¶ 20. After the purchase, Edrington began supervising the distribution and sale of Brugal products outside of the Dominican Republic. *Id*. at ¶¶ 22, 23. Edrington executives began travelling to Puerto Rico to liaise with Ballester concerning product performance, sales objectives, and marketing strategies. *Id*. at ¶ 23. However, Ballester continued to communicate with Brugal, and would place orders and send funds directly to Brugal. *Id*. at 5 ¶ 26. On April 15, 2019, Edrington notified Ballester that they were terminating their relationship and transferring to another distributor. *Id*. at ¶ 30. Ballester alleges that Edrington decided to terminate the agreement in order to consolidate its distributors in Puerto Rico. *Id*. at ¶ 29. The parties dispute whether Ballester's performance may have been a motivating factor in Edrington's decision. *Id*. at ¶ 30; Dkt. 196 at 6 ¶ 31.

## DISCUSSION

Ballester claims that Brugal violated Law 75 as principal to their distribution agreement by terminating the agreement without just cause. Puerto Rico's Law 75 provides that "no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause." 10 L.P.R.A. § 278a. The statute sought "to avoid the inequity of arbitrary termination of distribution relationships once the designated dealer had successfully developed a local market for the principal's products and/or services." *Medina & Medina Inc. v. Hormel Foods Corp.*, 840 F.3d 26, 41 (1st Cir. 2016).

Ballester also claims that Edrington is liable for tortious interference under 31 L.P.R.A. § 5141, for "promoting, causing and hastening" the unlawful cancellation of the distribution agreement. *See* Dkt. 142 at 11-12. To prevail on a claim of tortious interference, Ballester must show: 1) a contract with which a third party interferes, 2) that the third party acted tortiously, with knowledge of the contract's existence, 3) damages, and 4) a causal nexus between the damages and the tortious acts. *See Gen. Office Prods. Corp. v. A.M. Capen's Sons*, 780 F.2d 1077, 1081-82 (1st Cir. 1986). Ballester alternatively accuses Edrington of violating Law 75, should Edrington be found the principal in the parties' relationship. Dkt. 142 at 12-13.

Defendants raise several arguments in support of their motion for summary judgment, almost all of which were raised in previous motions and addressed in opinions by the court. *See* Dkts. 141, 186. Nonetheless, I will go through each of their arguments below.

A. **Novation, Assumption of Rights**

Defendants assert that an extinctive novation occurred in which Edrington replaced Brugal as principal to the distribution agreement. Dkt. 235 at 6-11. Alternatively, and to the same effect as an extinctive novation, Defendants argue that Edrington assumed Brugal's obligations under the contract. *Id*. Consequently, the tortious interference claim against Edrington fails as a matter of law since, as principal, Edrington was not a third party to the contract. *Id*. at 11-14. Defendants also argue that the Law 75 claim against Brugal fails as a matter of law because Brugal was not the principal in the relationship. *Id*. at 14-15.

Defendants have twice raised similar arguments with the court. *See* Dkt. 90 at 7-13; Dkt. 157 at 13-15. The court has already ruled that whether an extinctive novation occurred "requires weighing of the evidence and credibility determinations, thus precluding summary judgment." Dkt. 141 at 3; Dkt. 186 at 2-3. Similarly, the court found triable issues of fact in whether an

assignment occurred, which requires each of "the three interested parties [to] concur in [] the assignment." Dkt. 141 at 3 (citing *Goya de P.R., Inc. v. Rowland Coffee*, 206 F. Supp. 2d 211, 218 (D.P.R. 2002)). Ballester and Brugal continued communicating with each other after Edrington's acquisition, and Ballester claims they would only place purchase orders and send payments to Brugal, not Edrington. Dkt. 142 at 5 ¶ 26. This may imply Ballester still viewed Brugal as the principal and did not concur that an assignment had taken place. Since the questions of whether a novation or assignment occurred contain triable of issues of fact, summary judgment is inappropriate.

### B. Alter Ego

Next, Defendants argue that Edrington cannot be liable for tortious interference because it is an alter ego of Brugal, and thus not a third-party to the distribution contract. Dkt. 235 at 12-13. This argument was previously rejected by the court. *See* Dkt. 186 at 3. Acknowledging the presumption of corporate separateness, the court found that Defendants failed to present "strong and robust evidence showing [Edrington] to have that degree of control over [Brugal] as to render the latter a mere shell of the former." *Id*. (citing *Adames-Milan v. Centennial Commc'ns Corp.*, 500 F. Supp. 2d 14, 26 (D.P.R. 2007)). This conclusion continues to be true. Brugal continues to exist as its own company with its own corporate formalities – Ballester maintained a direct relationship with Brugal even after Edrington purchased its majority stake. Dkt. 142 at 5 ¶ 26. Therefore, Defendants do not prevail on their alter ego argument at summary judgment..

### C. Statute of Limitations

Next, Defendants argue that Ballester's alternate claim against Edrington under Law 75 is time-barred by the three-year statute of limitations. Dkt. 235 at 17-19; 10 L.P.R.A. § 278d. Defendants argue that Ballester only raised this claim in October 2023, over three years after their

relationship with Brugal and Edrington was terminated. *Id*. at 18. The court has already rejected this argument. *See* Dkt. 186 at 5 n.2. Ballester's filing of their action in the Puerto Rico courts tolled the statute of limitations. *Id*. Defendants were aware of the claim against Edrington before the complaints were filed. *Id*. And "in cases like this, where Defendants' own actions cause confusion and lead Plaintiff to state its claims against the wrong party, the good faith doctrine is applied." *Id*. (citing *Velilla v. Pueblo Supermarkets, Inc.*, 111 P.R. Offic. Trans. 732, 736 (1981)). Defendants insist that Edrington was the principal, was Brugal's alter ego, and is "squarely within the Brugal corporate family" – they cannot also claim that Edrington was unaware of Ballester's Law 75 claims. *Id*. Therefore, I reject Defendants' statute of limitations argument.

### D. Just Cause

Defendants next argue that they had just cause to terminate their distribution agreement with Ballester. A principal is not liable under Law 75 if it had just cause to terminate a dealer agreement. 10 L.P.R.A. § 278a. This argument has already been rejected as improper for summary judgment, as the just cause issue is rife with disputed questions of fact. *See* Dkt. 141 at 4-5. To list a few examples, there is no written contract defining the performance requirements agreed to by the parties, and the parties disagree about whether Ballester breached any obligations. *See* Dkt. 235 at 24-25; Dkt. 260 at 20-21. The parties are at odds characterizing the Brugal brand's performance in Puerto Rico under Ballester. Dkt. 235 at 21-24; Dkt. 260 at 16-18. They disagree about basic facts such as who bore responsibility for setting marketing strategies. Dkt. 235 at 21-24; Dkt. 260 at 15-16. And they dispute whether Edrington expressed satisfaction or concern with Ballester's performance during their relationship. Dkt. 196 at 18 ¶ 19; Dkt. 260 at 14. Considering the many factual disagreements between the parties, just cause is not a question that can be settled at summary judgment.

**E. Res Judicata**

Finally, Defendants assert that the Puerto Rico courts have conclusively found that Edrington was the principal in the parties' relationship. Dkt. 235 at 15-17. However, the Defendants acknowledge that the Puerto Rico court decisions are subject to pending motions for reconsideration and are not final. *Id*. Thus Defendants cannot (and do not seem to) claim that res judicata compels the conclusion that Edrington is principal. *See Nunez Nunez v. Vazquez Irizarry*, 367 F. Supp. 2d 201, 205 (D.P.R. 2005) ("As is well known, the Puerto Rico Supreme Court has held that in order to be given res judicata effect, a judgment must be 'final y firme', or 'final and unappealable.'") (citing *Rivera v. Ins. Co. of Puerto Rico*, 103 D.P.R. 91, 92, 3 P.R. Offic. Trans. 128 (1964)). Nor do they request an abstention pending final resolution by the Puerto Rico courts. Thus, res judicata does not provide a basis for granting summary judgment in Defendants' favor.

## CONCLUSION

For the above-mentioned reasons, Defendants' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 14th day of February, 2025.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge