IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**BALLESTER HERMANOS, INC.,**

  Plaintiff,

  v.

**BRUGAL & CIA. C. POR A.,** *et al.*,

  Defendants.

Civil No. 19-2100 (BJM)

## OPINION AND ORDER

Plaintiff Ballester Hermanos, Inc. ("Ballester") filed suit against Brugal & Cia. C. por A. ("Brugal") and Edrington Group USA, LLC ("Edrington" and together with Brugal, the "Defendants"), over the termination of a distribution relationship between the parties. Docket No. ("Dkt.") 142. Ballester claims that Brugal violated the Puerto Rico Dealer's Act, 10 L.P.R.A. § 278, *et seq*. ("Law 75"), in terminating their distribution contract without just cause. *Id*. at 6-8. They also claim that Edrington tortiously interfered with the distribution contract in violation of Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. *Id*. at 11-12. In the alternative, they claim that Edrington violated Law 75 as principal to the distribution contract. *Id*. at 12-13. Before the court is Defendants' renewed motion for summary judgment. Dkt. 315. Ballester opposed Defendants' motion. Dkt. 332. This case is before me with the consent of the parties. Dkt. 193; 194. For the following reasons, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## STANDARD OF REVIEW

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood" upon conflicting evidence, no matter how reasonable those ideas might appear. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). "To defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)).

## BACKGROUND

The following is a summary of the facts relevant to the current motion for summary judgment, drawn from the parties' pleadings and making reasonable inferences in Ballester's favor as the non-moving party.

Brugal is a rum-manufacturing corporation organized under the laws of the Dominican Republic. Dkt. 142 at 2-3 ¶¶ 2, 6. Beginning around 1990, they began working with Ballester, a Puerto Rico corporation. *Id*. at ¶¶ 1, 6. Ballester served as the exclusive distributor for Brugal in Puerto Rico, advertising and promoting the Brugal brand and distributing cases of rum to retailers. *Id*. at 2-3 ¶¶ 6, 11, 17. In 2008, Edrington purchased a majority of Brugal's shares. *Id*. at 4 ¶ 20. After the purchase, Edrington began supervising the distribution and sale of Brugal products outside of the Dominican Republic. *Id*. at ¶¶ 22, 23. Edrington executives began travelling to Puerto Rico to liaise with Ballester concerning product performance, sales objectives, and marketing strategies. *Id*. at ¶ 23. However, Ballester continued to communicate with Brugal, and would place orders and send funds directly to Brugal. *Id*. at 5 ¶ 26. On April 15, 2019, Edrington notified Ballester that they were terminating their relationship and transferring to another distributor. *Id*. at ¶ 30. Ballester alleges that Edrington decided to terminate the agreement in order to consolidate its distributors in Puerto Rico. *Id*. at ¶ 29. The parties dispute whether Ballester's performance may have been a motivating factor in Edrington's decision. *Id*. at ¶ 30; Dkt. 196 at 6 ¶ 31.

On November 27, 2019, Ballester filed the original complaint in this case against Brugal (and only Brugal) in this district court, alleging violations of Law 75. Dkt. 1. On September 22, 2023, in denying Brugal's motion for summary judgment, the presiding district judge ordered Ballester to join Edrington to the case, and on October 20, Ballester filed the amended complaint naming Edrington as a co-defendant. Dkt. 141; 142. The amended complaint brought the same

Law 75 claim against Brugal as the original complaint while also adding Law 75 and tortious interference claims against Edrington. Dkt. 142.

On the same day they filed the federal court complaint, Ballester also filed suit against Edrington before the Puerto Rico Court of First Instance, claiming that Edrington tortiously interfered with their distribution contract with Brugal. Dkt. 314 at 3; Dkt. 331 at 4-5. However, in December 2023, the Court of First Instance dismissed the complaint. Dkt. 314 at 4; Dkt. 331 at 6. This decision was upheld by the Puerto Rico Court of Appeals, which reasoned that Edrington was principal to the distribution contract, and therefore not a third party capable of tortious interference. *Id*. Ballester sought first certiorari and then reconsideration before the Puerto Rico Supreme Court, both of which were denied. Dkt. 331 at 8-9. Consequently, the Supreme Court issued a mandate to the Court of Appeals, rendering the decision final and unappealable. *Id*. at 9.

## DISCUSSION

Defendants seek summary judgment in their favor on each of Ballester's causes of action. First, they argue that Ballester's tortious interference claim against Edrington is barred by *res judicata*, since the Puerto Rico courts have issued a final decision on the same claim. Second, they argue that the Law 75 claim against Brugal is also barred by *res judicata*, since the Puerto Rico court opinion found that Edrington replaced Brugal as principal. Third, they argue that the Law 75 claim against Edrington is barred by the three-year statute of limitations.

Ballester does not contest that the tortious interference claim is barred by *res judicata*. However, they oppose Defendants' motions for summary judgment on both Law 75 claims. I will consider each below.

**A. Law 75 Claim against Brugal**

Puerto Rico's Law 75 regulates the business relationship between principals and their locally appointed distributors. *See* 10 L.P.R.A. § 278a; *Caribe Indus. Sys. v. National Starch & Chem. Co.*, 212 F.3d 26, 29 (1st Cir. 2000). Liability under Law 75 only attaches to principals, not to other parties down the distribution line. *Meta Med., LLC v. Insulet Corp.*, Civil No. 23-1546, 2024 U.S. Dist. LEXIS 79365, at *13-14 (D.P.R. Apr. 23, 2024). "Principal" is defined in the statute as "Person who executes a dealer's contract with a dealer." 10 L.P.R.A. § 278. Defendants argue that the Puerto Rico courts have already determined that Edrington was principal, not Brugal. Taking this factual finding as preclusive, they argue that Ballester's Law 75 claim against Brugal fails as a matter of law.

The defendant to an action has the burden of establishing the affirmative defense of *res judicata*. *Dillon v. Select Portfolio Servicing*, 630 F.3d 75, 80 (1st Cir. 2011). Puerto Rico law determines the preclusive effect of a Commonwealth court's judgment. *Barreto-Rosa v. Varona-Mendez*, 470 F.3d 42, 45 (1st Cir. 2006). Under Puerto Rico law, "a party asserting a *res judicata* defense . . . must establish three elements: (i) the existence of a prior judgment on the merits that is final and unappealable; (ii) a perfect identity of thing or cause between both actions; and (iii) a perfect identity of the parties and the capacities in which they acted." *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 183 (1st Cir. 2006) (citing *Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 61-62 (1st Cir. 2000)). "[T]he Puerto Rico *res judicata* statute's "perfect identity of parties" clause does not demand a literal identity; it operates, rather, as a privity requirement." *Id*. at 14.

Ballester does not dispute the "final and unappealable" and "perfect identity of parties" elements of the *res judicata* statute. Instead, they contend that the Puerto Rico court opinions lack "perfect identity of thing or cause" with the present claim. Ballester argues that the case before the

Puerto Rico courts dealt with different factual allegations and was based on a different cause of action (tortious interference) than the present claim. I find this argument to be without merit. For the "perfect identity of thing or cause" requirement, "the phrase 'perfect identity' cannot be taken literally." *R.G. Fin. Corp.*, 446 F.3d at 183. Identity of "thing" is satisfied whenever "a decision in the second action might function to contradict a right arisen or arising from, or a right affirmed by a prior decision." *Id*. (internal quotation and alterations omitted). This is satisfied here – if Ballester were allowed to contest whether Edrington was principal, this would contradict Edrington's rights and obligations under the distribution contract as recognized by the Puerto Rico courts. Similarly, identity of cause is satisfied because the "action flows from the same principal ground or origin" as the Puerto Rico court case – namely, the termination of the distribution relationship between Ballester, Brugal, and Edrington. *Id*. Therefore, Ballester's asserted lack of "perfect identity of thing or cause" is unsupported.

Next, Ballester argues that Brugal maintained its own status as principal even after Edrington became principal – both parties serving simultaneously as "co-principals." *See* Dkt. 332 at 18-19. They point to the definition of "principal" under Law 75 as "Person who executes a dealer's contract" and posit that this concept is not restricted to a single person. 10 L.P.R.A. § 278. They also argue, correctly, that previous cases in this district have not ruled out the possibility that multiple parties may be principal under Law 75. *See Goya de P.R. v. Rowland Coffee*, 206 F. Supp. 2d 211, 216 n.7 (D.P.R. 2002) (noting that "the issue of whether joint liability by two principals is admissible under Law 75" has not been settled); *Meta Med.*, 2024 U.S. Dist. LEXIS 79365 at *12-16 (refusing to reach the same question since neither defendant was found to be principal).

While I appreciate the novelty of Ballester's argument, the Puerto Rico courts have already found that Edrington was the *exclusive* principal in the distribution relationship. The Court of

Appeals found that Edrington became principal through an assignment and assumption of Brugal's obligations under the distribution contract. *See* Dkt. 314-2 at 24-25 ("[Edrington] acquired the rights and obligations of Brugal under the distribution contract," "[Edrington] was specifically appointed as the entity in charge of supervising all matters related to the marketing of Brugal products in Puerto Rico [and] . . . [Ballester] certainly consented to it being the new obligation principal," "the authority of appellee Edrington [] was endorsed by its parent company, by Brugal and by [Ballester]," "Edrington [] was the one that decided to cancel the contract in question"). Their finding that each party consented to the assignment reflects Puerto Rico law on the requirements for a valid assignment and assumption of rights. *See Goya*, 206 F. Supp. 2d at 218 ("For assignment of rights to occur, the three interested parties must concur in the act of the assignment: the party that transfers its position in the contract [the assignor], the assignee party that will acquire it and the obligor, that will be affected by the change of the person with whom he had contracted."). Under Puerto Rico law, assignment and assumption of rights extinguishes the obligations of the assignor. *Id*. ("[T]he perfection of the assignment of rights, accompanied by the consequent occupation of the assignor's contractual position by the assignee implies that he will automatically be liberated of his obligations toward the obligor."). Since Brugal's own obligations under the distribution contract were extinguished after they were assumed by Edrington, Brugal ceased to be a "Party that executes the distribution contract" under Law 75. *See id*. at 219 (finding assignor of distribution contract rights was no longer principal under Law 75 following the assignment). Such a conclusion is fatal to Brugal's Law 75 claim. Accordingly, I will grant Defendants' motion for summary judgment on this claim.

**B. Law 75 Claim against Edrington**

Defendants also seek summary judgment on Ballester's Law 75 claim against Edrington, arguing that the claim is time-barred. Ballester first brought the claim against Edrington in October 2023, when they filed their amended complaint. This was more than four years after the distribution contract was terminated, thus falling outside Law 75's three-year statute of limitations. 10 L.P.R.A. § 278d.

Defendants have raised the timeliness of Ballester's Law 75 claim against Edrington several times already, and each time their arguments have been rejected. *See* Dkt 186; 284. I do the same here, albeit under a different rationale. While Ballester's amended complaint was filed after Law 75's three-year statute of limitations had run, I find that their Law 75 claim against Edrington relates back to the filing date of the original complaint under Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure.[1] In order to permit relation-back of an amended complaint seeking to substitute a newly-designated defendant, three elements must be satisfied:

> First, the claim asserted against the newly-designated defendant must satisfy the terms of Rule 15(c)(1)(B), which provides that the claim must arise out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading. Second, within the period provided by [Federal Rule of Civil Procedure] 4(m) for serving the summons and complaint, the party to be brought in by amendment must have received such notice of the action that it will not be prejudiced in defending on the merits. Fed. R. Civ. P. 15(c)(1)(C)(i). Third, it must appear that within the same time frame the newly-designated defendant either knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c)(1)(C)(ii).
>
> *Morel v. Daimler-Chrysler AG*, 565 F.3d 20, 26 (1st Cir. 2009) (internal quotation marks omitted).

---

[1] Puerto Rico also has a relation-back statute, 32A L.P.R.A. Ap. V, Rule 13.3. However, the First Circuit has found that, in diversity actions such as this one, "less restrictive state relation-back rules will displace federal relation-back rules, but more restrictive state relation-back rules will not." *Morel*, 565 F.3d at 26. Since I find that the amended complaint satisfies the federal relation-back rules, there is no need to consider Puerto Rico's relation-back rule.

The first element is that the claim must arises out of the same conduct, transaction, or occurrence set out in the original pleading. This is clearly met here. Ballester's Law 75 claims against Brugal and Edrington are based on the same events – those leading up to and including the termination of the distribution contract with Ballester. The claims are generally identical but for the defendant sued as principal.

The second element concerns notice, the goal of which is to prevent the new defendant from being prejudiced in defending the claim on the merits. *See Morel*, 565 F.3d at 26 ("[N]otice need not be manifested by formal service of process within the prescribed period. Rather, notice must simply be such that the defendant will not be prejudiced in defending on the merits.") (internal citation omitted). I find that this element is also satisfied. Edrington consistently argued that they were intimately involved in the distribution relationship with Ballester, claiming to be the true principal in the relationship rather than Brugal. *See, e.g.*, Dkt. 157 at 13-15; Dkt. 235 at 5-11. They also claimed on numerous occasions to be Brugal's "alter ego." Dkt. 157 at 13-15; Dkt. 235 at 5-11. "[U]nder certain circumstances general notice requirements can be satisfied if interests between the original party and the added party are so similar and so identical that the institution of the action and the service upon the original party can be held as constructive notice of the action to the added party after the limitations period expired." *Rogatz v. Hospital General San Carlos, Inc.*, 89 F.R.D. 298, 300 (D.P.R. 1980). And Edrington was itself sued by Ballester on the same day as Brugal, albeit in the Puerto Rico Court of First Instance. Therefore, it is safe to assume that Edrington was aware of Ballester's Law 75 claim when it was originally filed in November 2019 and will not be prejudiced in defending the claim on the merits.

The third and final element requires showing that the plaintiff "made a mistake about the actual identity of the proper defendant and that, within the prescribed time, the party knew or

should have known that, but for the mistake, it would have been sued." *Morel*, 565 F.3d at 27. This element is also satisfied. Ballester intended to sue the principal to the Ballester-Brugal distribution relationship. They believed that Brugal was the principal, though as the Puerto Rico courts later determined, Edrington became principal after assuming Brugal's rights and obligations. As for Edrington's knowledge, they consistently acted as if they believed they were the principal. They took charge of supervising the distribution of Brugal rum, and they delivered the notice of termination to Ballester when they wanted to end their relationship. *See supra* p. 7. In later filings to the court, Edrington consistently argued that they were the principal. *See* Dkt. 157 at 13-15; Dkt. 235 at 5-11. Thus, Edrington must have known and believed that Ballester's Law 75 claim should have been directed against them rather than Brugal.

Since each of the three elements is satisfied, Ballester's amended complaint relates back to the date of the original complaint. Consequently, their Law 75 claim against Edrington is timely, and Edrington's motion for summary judgment on this claim will be denied.

## CONCLUSION

For the above-mentioned reasons, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Defendants' unopposed motion for summary judgment on Ballester's tortious interference claim against Edrington is **GRANTED**. Defendants' motion for summary judgment on Ballester's Law 75 claim against Brugal is **GRANTED**. Defendants' motion for summary judgment on Ballester's Law 75 claim against Edrington is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of March, 2025.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge